UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DARRICK FINDLAY,

                  Plaintiff,

v.                                                                     6:15-CV-1250
                                                                       (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON           STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                  TOMASINA DIGRIGOLI, ESQ.
OFFICE OF REG'L GEN. COUNSEL– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently before the Court, in this Social Security action filed by Darrick Findlay ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10, 12.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

I.      **RELEVANT BACKGROUND**

     A.      **Factual Background**

Plaintiff was born on September 17, 1974. (T. 107.)[1] Plaintiff obtained a certificate of general educational development (GED), and has past work as a janitor, a line cook, an operator, and a supervisor. (T. 199, 212.) Generally, Plaintiff's alleged disability consists of degenerative disc disease, spinal stenosis, a herniated disc, a bulging disc, type two diabetes, and high blood pressure. (T. 211.)

     B.      **Procedural History**

On October 19, 2012, Plaintiff applied for a period of Disability and Disability Insurance Benefits, alleging disability beginning July 2, 2012. (T. 13.) Plaintiff's application was initially denied on January 30, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) On May 20, 2014, Plaintiff appeared in a video hearing before the ALJ, Angela Miranda. (T. 24-66.) On June 12, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 6-23.) On September 24, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.)

     C.      **The ALJ's Decision**

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 15-23.) First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017, and has not engaged in substantial gainful activity since July 2, 2012, the alleged onset date. (T. 15.) Second, the ALJ

---

[1]      Page citations refer to the page numbers used on CM/ECF rather than the page numbers contained in the parties' respective motion papers.

found that Plaintiff has the following two severe impairments: (1) lumbar spine dysfunction described as mild dextroscoliosis, with protrusion at L4-5 and herniation at L5-S1, and degenerative changes at multiple levels described as stenosis; and (2) bilateral shoulder dysfunction described as tendonitis and calcifications. (T. 15-16.) The ALJ found that Plaintiff's following impairments are not severe under the regulations: hypertension, hypercholesterol, at least one episode of tachycardia, and type two diabetes. (*Id.*) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). (T. 16.) The ALJ considered Listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine). (*Id.*)

Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) with postural and manipulative limitations. More specifically, the claimant has the capacity to occasionally lift and carry ten pounds. The claimant has the unlimited capacity to push and pull up to the weight capacity for lifting and carrying. The claimant has the capacity to stand and walk 6-8 hours in an 8-hour workday and has the capacity to sit 6-8 hours in an 8-hour workday. The claimant requires the ability to change position while at work and this can be met at normal breaks or meal periods and it can be met without leaving the workstation while remaining on task to the work duties. The claimant has the capacity to occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps. The claimant has no limitations [in] manipulative abilities except reaching is limited to frequently in all directions and occasionally overhead. Considering the claimant's complaints of pain and distractibility as related to that pain, mentally the claimant has the capacity to understand, remember, and carry out simple, routine tasks. In doing so, the claimant has the capability to utilize common sense understanding to carry out instructions, to deal with several concrete variables in standardized situations, and to sustain this mental ability consistent with the normal demands of a workday including regular breaks and meal periods. The claimant has the capacity to identify and avoid normal work place hazards and to adapt to routine changes in the work place.

(T. 16-20.) Fifth, the ALJ found that Plaintiff is able to perform past relevant work as a line cook. (T. 20-21.) Sixth, in the alternative, the ALJ determined that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 21-23.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff argues that the ALJ committed reversible error by failing to apply the treating physician rule in evaluating the October 2013 opinion from treating orthopedist Joseph Pierz, M.D. (Dkt. No. 10, at 2-6 [Pl.'s Mem. of Law].) Within this argument, Plaintiff argues that the ALJ mischaracterized Plaintiff's activities of daily living. (*Id.,* at 5-6.)

Defendant argues that the ALJ properly assessed Dr. Pierz's opinion. (Dkt. No. 12, at 8-15 [Def.'s Mem. of Law].) Within this argument, Defendant argues that the ALJ's RFC determination was supported by substantial evidence, including the opinions of consultative examiner Tanya Perkins-Mwantuali, M.D., and orthopedic surgeon William Ferraraccio, M.D. (*Id.*)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.   **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v.*

5

*Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Whether the ALJ Properly Applied the Treating Physician Rule in Evaluating Dr. Pierz's Opinion

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. Dkt. No. 12, at 8-15 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is not inconsistent with other

6

substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(c)(2); *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015), *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Greek,* 801 F.3d at 375; *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the frequency, length, nature and extent of the physician's treatment, (2) the amount of medical evidence supporting the opinion, (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist. 20 C.F.R. § 404.1527(c); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004) (listing regulatory factors).

Here, the record includes opinions of Plaintiff's work-related physical abilities and limitations from: (1) consultative examiner Tanya Perkins-Mwantuali, M.D., (2) orthopedic surgeon William Ferraraccio, M.D., and (3) treating orthopedist Joseph Pierz, M.D. (T. 342-45, 394-98, 482-86.)

### i. Consultative Examiner Dr. Perkins-Mwantuali

On December 31, 2012, Dr. Perkins-Mwantuali examined Plaintiff and opined that Plaintiff had mild to moderate limitation with bending and twisting. (T. 345.) Upon examination, Dr. Perkins-Mwantuali observed that Plaintiff had a positive straight leg raise on the left and was tender to palpation of the lumbar spine, but had full strength and full range of motion in his extremities. (T. 18, 344.) Dr. Perkins-Mwantuali further observed that Plaintiff appeared to be in no acute distress, had a normal gait and station, could walk on his heels and toes, and could perform a full squat. (T. 343.) Finally, Dr. Perkins-Mwantuali observed that

7

Plaintiff needed no assistive device, was able to rise from a chair without difficulty, and needed no help changing for the examination or getting on and off the examination table. (*Id.*)

### ii. Examining Orthopedic Surgeon Dr. Ferraraccio

On July 31, 2012, Dr. Ferraraccio examined Plaintiff, reviewed his medical records, and provided an opinion of his work-related physical abilities and limitations. (T. 394-98.) Upon examination, Dr. Ferraraccio observed that Plaintiff appeared to be in no acute discomfort, was ambulatory with no assistive device, and got on and off the examination table without assistance. (T. 395.) Dr. Ferraraccio observed tenderness and muscle spasm around Plaintiff's spine, but noted that an x-ray examination of Plaintiff's spine earlier in the month showed only "mild scoliosis" and was otherwise negative. (T. 395-96.) Dr. Ferraraccio noted that Plaintiff participated in physical therapy and complained of constant pain, but did not take prescription medication for the pain. (T. 395.) In sum, Dr. Ferraraccio opined that Plaintiff could perform light-duty work that allows him to change position depending on his level of discomfort, and does not require bending, stooping, twisting at the waist, or lifting more than 15 pounds on an intermittent basis. (T. 397.) Dr. Ferraraccio affirmed this opinion on February 5, 2013. (T. 401-02.)

### iii. Treating Orthopedist Dr. Pierz

On October 14, 2013, Dr. Pierz provided an opinion of Plaintiff's work-related physical abilities and limitations due to his intervertebral degenerative disc disease and lumbar spinal stenosis. (T. 482-86.) Dr. Pierz opined that Plaintiff could stand/walk for about four hours in an eight-hour workday, "occasionally" lift less than ten pounds, "rarely" lift ten pounds, and

"never" lift 20 pounds in an eight-hour workday.[2] (T. 484-85.) Dr. Pierz opined that Plaintiff would need a job that permits shifting positions at will from sitting, standing, or walking; and would need to take unscheduled work breaks during an eight-hour workday. (T. 483-84.) Dr. Pierz opined that Plaintiff could sit for about 30 minutes, and stand for about 15 minutes, before needing to change positions. (T. 483.) Finally, Dr. Pierz opined that Plaintiff could rarely twist, and occasionally stoop, crouch/squat, and climb ladders and stairs. (T. 485.)

As an initial matter, the Court turns to Plaintiff's argument that the ALJ erred by assigning "limited weight" to Dr. Pierz's opinion based on an improper allegation of bias. (Dkt. No. 10, at 4-5 [Pl.'s Mem. of Law].) In discussing Dr. Pierz's opinion, the ALJ stated that it "was procured specifically to gain disability benefits, not treat the claimant. It could therefore not truly be considered 'unbiased.'" (T. 19.) "'The mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of a report.'" *Gunter v. Comm'r of Soc. Sec.*, 362 F. App'x 197, 199 n. 2 (2d Cir. 2010) (quoting *Reddick v. Chater*, 157 F.3d 715, 726 [9th Cir. 1998]); *accord, Balodis v. Leavitt*, 704 F. Supp. 2d 255, 265-66 (E.D.N.Y. 2010). Accordingly, the Court agrees that the ALJ's aforementioned statements were improper. However, remand is not required on this basis because the ALJ did not base her assessment of Dr. Pierz's opinion solely on the underlying purpose of Dr. Pierz's opinion. (T. 19.) Rather, the ALJ properly applied the following regulatory factors in determining that Dr. Pierz's opinion was inconsistent with substantial evidence in the record and, therefore, not entitled to controlling weight. (T. 16-21); *see Zabala v. Astrue,* 595 F.3d 402, 409 (2d Cir. 2010) (finding that remand for an error was

---

[2] Dr. Pierz's assessment form stated that "'rarely' means 1% to 5% of an 8-hour working day; [and] 'occasionally' means 6% to 33% of an 8-hour working day." (T. 483.)

not required when application of the correct legal principles could only lead to the same conclusion.)

First, the ALJ noted that Dr. Pierz's highly restrictive opinion was inconsistent with other medical evidence, including Dr. Pierz's own treatment notes. (T. 17-20); *see Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that an ALJ was not required to afford controlling weight to a physician's opinion that conflicted with his own treatment notes); 20 C.F.R. § 404.1527(c)(3). The ALJ noted that Dr. Pierz's opinion indicated that Plaintiff was unable to perform even sedentary work,[3] yet Dr. Pierz's treatment notes indicated that Plaintiff remained able to walk and the record indicated that Plaintiff had full strength in his extremities. (*Id.*) Moreover, during multiple examinations in 2013, Dr. Pierz's observed that Plaintiff had negative straight leg raising tests on both sides. (T. 489, 495, 500, 503, 505.)

Additionally, in February 2012, Dr. Pierz indicated that Plaintiff was currently working with restrictions and could continue to do so. (T. 263.) In May 2013, Dr. Pierz noted that, despite reporting lower back pain and episodes of sciatica, Plaintiff still "does his exercises and tries to be as active as possible." (T. 493.) In July 2013, Dr. Pierz noted that Plaintiff reported that his back felt "pretty good," he had no sciatica when he walked, he tried to stay active in the summer, and would start school the following month. (T. 495.) In October 2013, the same month as Dr. Pierz's opinion at issue, while Dr. Pierz noted that Plaintiff complained of back pain, he also noted that Plaintiff was attending school and looking for part-time work. (T. 497.)

Second, the ALJ considered other medical evidence that was inconsistent with Dr. Pierz's opinion, including the opinions of consultative examiner Dr. Perkins-Mwantuali discussed above

---

[3] Dr. Pierz's opined that Plaintiff could lift less than ten pounds "rarely," or between one and five percent of an eight-hour workday. (T. 483-85.) However, sedentary work requires the ability to lift or carry up to ten pounds in an eight-hour workday on an occasional basis, or up to one-third of an eight-hour workday. 20 C.F.R. § 404.1567(a); SSR 83-10, 1983 WL 31251 (1983).

in Part III.A.i. of this Decision and Order. (T. 18, 20. ) "Generally, the opinion of the treating physician is not afforded controlling weight where the treating physician issued opinions that are not consistent with the opinions of other medical experts." *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2013) (quotation marks and alterations to original quotation omitted); *see also* 20 C.F.R. § 416.927(c)(4). Moreover, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(1)(vi), 404.1513(c), 404.1527(e); *see also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012); *Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015).

Third, the ALJ noted that Dr. Pierz's opinion was inconsistent with Plaintiff's activities, including participating in household chores, cooking, cleaning his yard, shopping, and driving. (*Id.*) Plaintiff further reported that he was able to garden, mow the lawn, remove snow, shovel, perform household repairs, and maintain his vehicle. (T. 19, 221.) The ALJ noted that Plaintiff gave up more strenuous activities, like changing oil, and sometimes had help with these activities, but also testified that he is able to split household cooking duties with his wife, sometimes went fishing, and went hunting using a chair to wait for deer. (T. 19.) Finally, the ALJ noted that Plaintiff testified that he was looking for work, but had not heard back from potential employers. (*Id.*)

Turning to Plaintiff's argument that the ALJ mischaracterized Dr. Findlay's activities of daily living, the Court finds this argument without merit. A review of the record, including the ALJ's complete decision, indicates that the ALJ appropriately and accurately and summarized Plaintiff's reported activities. (T. 19.) Moreover, the Court agrees that Dr. Pierz's restrictive opinion conflicted with Plaintiff's reported activities. *See Roma v. Astrue,* 468 F. App'x 16 (2d

11

Cir. 2012) (finding that the ALJ properly declined to afford controlling weight to a treating physician's opinion that was inconsistent with other substantial evidence, including the plaintiff's testimony that he could perform a reasonably broad range of light, non-stressful activities at or near his home, including driving, reading, sending email, and independently performing activities of daily); *see also* 20 C.F.R. § 416.927(c)(4) (stating that, generally, the more consistent an opinion is with the record as a whole, the more weight will be afforded to the opinion).

In sum, the ALJ properly applied the regulations in evaluating Dr. Pierz's opinion by considering his treatment of Plaintiff, treatment notes, professional specialty as an orthopedist, and the consistency of his opinion with other substantial evidence in the record as discussed above. (T. 15-20); 20 C.F.R. § 404.1527(c). Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where a plaintiff challenged the ALJ's failure to review each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

For these reasons, the Court finds that the ALJ's assessment of Dr. Pierz's opinion was supported by substantial evidence, and remand is not necessary on this basis.

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>DENIED</u>;** and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **<u>GRANTED</u>;** and it is further

12

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED.**

Dated: December 20, 2016
       Syracuse, New York

                                       Hon. Glenn T. Suddaby
                                       Chief U.S. District Judge